"Wanamaker, J.
From the foregoing statement of facts which appear in the record, the following would appear to be beyond dispute: That Meyer’s attention was first directed to this truck by the Packard Cleveland Motor Company’s newspaper advertisement, headed “Packard Used Trucks,” as shown in defendant’s Exhibit 1, in which advertisement appeared : ‘ ‘ Our rebuilt trucks look good, and will give you the very best of service. Come in and buy a rebuilt guaranteed Packard.” And also by the advertisement shown in defendant’s Exhibit 2: “Packard Motor Cars * * * Used Truck Bulletin * * * *335 Do you. know that a high-grade used truck rebuilt and renewed is a better buy and of more substantial value than a cheap new truck? * * * A rebuilt Packard is practically a new truck as far as wearing qualities and operating efficiency is concerned. * * * A rebuilt Packard carries the same warranty as a new truck.”
Thereafter, Meyer signed an order for the truck he bought, on January 17,1919, by virtue of which it is claimed that the newspaper advertisements aforesaid were eliminated from all consideration in the-contract of purchase, and, secondly, that all oral agreements during the negotiations were likewise' eliminated, for which elimination the following portion of the exhibit is especially relied upon as sufficient :
“All promises, verbal understandings or agreements of any kind pertaining to this purchase, not specified herein, are hereby expressly waived.”
It is agreed, however, upon all hands, that Meyer bought a 5-ton rebuilt dump truck, which at the time above exhibit was signed was in process of rebuilding, and not completed; that it was not delivered to Meyer as a completed rebuilt truck until the following March, nearly two months thereafter.
It is admitted that Meyer paid $4,200, a substantial sum, to a standard motor car company. "What was Meyer to get in return for his money? A toy truck, or a transportation truck; a 5-ton dump truck merely in size or style; or was it to be a 5-ton dump truck for the usual and ordinary service to which dump trucks are put? The consideration to be given to Meyer for his $4,200 was not merely a shape of *336 5-ton size, but a thing fitted for practical, useful, substantial service as a dump truck.
When a man buys a horse he hardly needs a warranty that it is a horse, or that it is not a mule or a camel, though they belong to the same general family of burden bearers, and if there was such a warranty it would be equal folly to undertake to determine whether or not it was express or implied.
The sales act, which is relied upon in argument in this case, is held to apply in behalf of plaintiff in error touching implied warranty, especially Section 8395, General Code, which reads:
“Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:.
“(1) When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment, whether he be the grower or. manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.
“ (2) When the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality. * * *
“ (6) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith.”
It is quite clear from the above language of the Sales Act, that the “goods supplied under a con *337 tract to sell or a sale” must be for “some particular purpose,” as distinguished, from a “general purpose.” Here the rebuilt truck was clearly sold for the general purposes served by the usual and ordinary 5-ton dump truck. It would be a misnomer, with which commercial and business trade is entirely unfamiliar, to use the words “particular purpose” as to any such article for manufacture or sale as a dump truck. It must of necessity be what it purports to be, what it appears to be. It is indeed manufactured for that purpose, and for no other purpose; it is sold for that purpose, and for no other purpose; and to give it the use of the limited words “particular purpose,” would seem to be misusing and perverting the plain and ordinary meaning of everyday language.
If, however, the Sales Act should be held to apply, clearly the implied warranty that is inherent in and essentially a part of every such sale could be shown by evidence, if any, outside of the doctrine of res ipsa loquitur. In this case, the 5-ton dump truck speaks for itself as to the purpose, and it was a question for the jury to determine whether or not, in accordance with usage and custom, construed in connection with the general advertisements made by the Packard company touching such trucks, it was a part of the consideration of such sale.
It is quite clear and conclusive that the language in the written order or contract of sale, “all promises, verbal agreements, or agreements of any kind pertaining to this purchase not specified herein, are hereby expressly waived,” relates solely to any special contracts or arrangements expressly made by *338 the parties outside of the general custom or usage in such sale of goods.
It in-no wise negatives or nullifies the things or matters set forth by the Packard Motor Company in its general newspaper ads which appear in evidence in this case. Whether or not the newspaper advertisements, and the things and matters therein set forth, were relied upon by the purchaser as essentially descriptive of the dump truck he purchased, and entered into the contract between the parties, is a question for the determination of the jury. Again, whether or not the repairs were fairly and justly referable to defects in the rebuilding of the truck by the Packard Company is also a question for the jury. And likewise is the related question as to how much, if any, of such repairs was made necessary by the defendant’s abuse or misuse of the truck, or in the course of the general usage of the truck. This cause should have been left to the jury for determination, under proper instructions by the trial judge as to the law of this ease, both upon defendant’s defense to the account sued upon and upon defendant’s cross-petition.
It may be urged that this is a substantial modification of the old doctrine of caveat emptor, let the buyer beware. Is it not high time, however, that that doctrine should be somewhat modified; at least that it should have no higher place in the business life of a nation than the companion doctrine, “let the seller beware.”
There is entirely too much disregard of law and truth in the business, social and political world of today. I am using this term in its broad sense. Constitutions, statutes, sound legal and ethical prin *339 eiples are becoming little more than mere scraps of paper, not only between individuals, but among states and nations.
It is time to hold men to their primary engagements to tell the truth and observe the law of common honesty and fair dealing. Such a change, in my judgment, would not be so much in the line of revolution as in the line of reasonable reform. Honest men need not fear it; dishonest men should be kept in fear of it.
Judgment reversed, and cause remanded to the trial court for such other and further proceedings as are required by law.

Judgment reversed.

Hough, Jones and Matthias, JJ., concur.
Robinson, J., concurs in proposition 1 of the syllabus and in the judgment, but does not concur in propositions 2 and 3 of the syllabus.
Clark, J., took no part in the consideration or decision of the case.